Good morning, Your Honors. May it please the Court, my name is Kent C. Preck. I'm appearing here on behalf of the International Painters Fund. I would like to reserve four minutes and reserve my comments on any attorney's fees issues to that point. I would like to step in directly to the question that the Court has already posed, and I owe a debt of gratitude to the Court for pointing out my blind spots on Menhorn because of my concern of the application ruling below. I think the Court's question is apt. I think Menhorn is the better on-point case here rather than Canseco. Once we get rid of the application as being a substantive condition, everything that affected this case was before 1975. It is distinguishable from Canseco in all of those grounds. The last service performed was in March of 1974, according to all allegations, and Canseco was 1975 after ERISA. The cessation of work also in those same days. The disabling injury was in March of 1974, also distinguishing it from Canseco. The denial, the supposedly bad advice about not being vested was in 1974, according to Mr. Schor's own testimony that he called shortly after his disability. Menhorn, in describing both Quinn and Freeman, and the Third Circuit decision in Tenzillo, focus on that. That's also pre-1974, so any estoppel claim, if any, rests that time. And Menhorn itself deals with a break in service, which simply matures, in this case, after the 1975, but that break in service, as in Menhorn, was something that was inevitable because Mr. Schor could no longer work. I didn't so the only things that happened after 1975 are Mr. Schor gets his Social Security Award, but that is merely a way of being deemed permanently disabled. It's not a condition of the disability. And the application, which Judge Pro found, was merely procedural, not a substantive or operative fact. The other strain that Menhorn deals with of 1144b1 is whether there's a cause of action that accrued before 1975. Conceivably, the denial in 1974 also fits that prong. Was Schor eligible for benefits under the 76 plan in the absence of Social Security's disability determination? Yes, I believe so, Your Honor. The 1967 plan. I had thought that that was a condition. One of the conditions he had to set. As I read it, it says that he'll be deemed disabled if he has a Social Security Award. It may have been treated as a condition. But I believe under Menhorn, the disabling injury was still pre-'75. That is part of the reason, yes, we didn't focus on the Menhorn issue perhaps below. And you don't think the award of Social Security disability benefits was a significant event? I do, Your Honor, but not in the sense that we all agree that it's the 1967, not the 1976 plan that applies at this point. Okay. I understand your argument. Because what we're really talking about, the analysis below is that the 2003 plan refers back to the plan at the last date of service, which would be 1967 plan, which makes the 1976 plan irrelevant. There is confusion in the record because the original Social Security award he sent was 1976, and they sent him the 1976 plan on that basis. Did he have to was application a condition of qualification? It's our view that it was, Your Honor. Judge Proulx disagreed with that. And if we accept Judge Proulx's reading of the plan, then I think all the events are pre-1975. That's what I meant by my blind spot. I was concerned about that application ruling. It's in my brain. There are a couple of issues of fact that come up because of summary judgment. First, because of summary judgment, we end up conceding there's 120 units. It might make him eligible. Might? Might? Well, if he has 120 units, he would be eligible. I thought the plan administrator accepted the fact that he had the requisite number of units. Am I wrong about that? He did in certain respects, yes, Your Honor. It would have made him eligible. Is this like being a little bit pregnant? The issue, Your Honor, is that if we're going to a de novo trial, if we're looking at purely de novo and the burden is on plaintiff, then it's not just whatever you oppose, it's we start from scratch. I thought what went wrong here was initially the administrator of the plan said, wait a minute, you don't have such a number of units. Then there's some exchange of information. And at the end of that, the plan administrator says, you know what, you're right. You've got 120 units. Is that not where you're at? Can I finish my question? I'm sorry. Is that not what happened, what I just described? That is not what happened. Okay. Tell me what happened. The administrator initially and throughout denied Mr. Schor because he had a break in service and was no longer a participant or an employee in the plan. Was he permanently disabled? I'm sorry, Your Honor. Was he permanently disabled? He was found permanently disabled in 1976, Your Honor, effective as of March 1974. But when was the break in service? The break in service would have matured in 1977. After he was permanently disabled? After he was disabled. After he was declared disabled. After he was declared disabled. By the Social Security Agency. Correct. And there's nothing in the record that would suggest that that information was given to the plan. That information was not given to the plan. Initially, in 2003, he sent in his 2002 checks for a statement of 2002. So they responded to him as a 2002 disability. Later he sent in a notice that he'd been awarded in 1976, which they misread as being a 1976 disability. It's actually 1974. A critical point, Your Honor, though, I think, is going to try to address your decision in Canseco. I think you – first of all, let me say that Canseco is correctly decided. The result is correct. And the reason it is – That's nice to know. The reason is, Your Honor, that I think you need to also focus that that case should be limited to its facts of normal retirement benefits. And that's for a variety of reasons. First, I think you properly at that time ruled based on the terms of the plan because that appeared to be the narrower ground of decision, which is the appropriate judicial course. I think as time has gone on, as this case and its predecessor I can't name has shown, it's actually the statutory ground, the vesting ground, based on the duty to pay nonbenefits at normal retirement age that is actually narrower. And clearly after 1976, the fact that the statute says you will pay normal retirement benefits or benefits at age 70 and a half regardless of application precludes any rule of common law that would say, oh, no, other benefits like early retirement and disability also vest if you could ever have applied. The statutory ground here works very well. It solves all the problems. The IRS should have gotten around to answering the question earlier, issued final regs in 2004 on something from 1976. But that is the narrower ground of decision. It's my understanding, counsel, that this claim wasn't denied because Schor was not disabled, but because the pension credit was canceled due to the break of employment, right? That's correct, Your Honor. So then in that instance, whether he's disabled or not really has no relevance, does it? That's correct, Your Honor. Is that because he didn't notify them that he was permanently disabled? It would be because he didn't apply in time, Your Honor. The one thing that I noted that's not in the briefs that I noted on rereading Canseco, going back to Mr. Schor's argument that you have to put the eligibility conditions all in one section of the plan, the term employee is a capitalized, defined term in this plan. It was not in Canseco. And that definition ties directly to the break in employment rules. So when Mr. Schor did not apply within the three years, his service was canceled. He was no longer an employee in the plan. And if I can just point out two quick issues. I have one other question. It's my understanding that the break in employment provision suggests that anyone who meets the vesting requirements shall remain entitled to the benefits after the break in employment, correct? That's correct. And it's also my understanding that in order to meet those benefits, in other words, being entitled to the benefits, Mr. Schor would have either had to be 50, which he wasn't, or that he would have had to have accumulated 60 future service credits, which he didn't. Correct, Your Honor. So, again, the vesting part of the policy is the controlling instance here, not the disability. Yes, Your Honor. Just going back to our policy concerns, pension plans are the reverse of a life insurance policy. In a life insurance policy, you insure death, and part of that is paid by the people who live. Pension works opposite. We actually insure life, but part of that is dependent in a defined benefit plan where you can get back more than the money you put in on being financed by people who die prematurely or fail to apply. You can insure one or the other. You can't insure both. You cannot keep pension plans solvent if everybody who ever could have applied can come in at any time and is entitled to benefits retroactive to that date. The statute isn't set up that way, and neither is the plan. I would like to reserve my remaining time. A couple of quick questions. Was Schor permanently disabled prior to attaining the age of 65? Yes. Did he have 120 units of pension credit? According to the summary judgment record below, yes, Your Honor. And had he accrued 12 units of future service credit? Yes. Were there any other requirements? Yes, that he be an employee and that he have those when he applied. Okay. Thank you. Just to add that, Your Honor, in this plan, eligibility was an application was an eligibility condition under the plan as a whole, and there was an express limit on retroactive benefits. Okay. Good afternoon, Your Honors. May it please the Court, my name is Lindsay Naco, and I represent Plaintiff Appellee Cross Appellant David Schor. As has been made clear this morning, there is no dispute that Mr. Schor is permanently disabled. He was disabled by a tragic on-the-job event, falling from scaffolding and suffering a severe injury to his back. He has met age and service requirements necessary for a disability pension, and he is not seeking a pot of gold. He is seeking $79.20 a month. I would like to address each of the points raised by counsel for the plan in turn. However, as an initial matter, I would like to address the question of subject matter jurisdiction raised by this Court. This Court does have subject matter jurisdiction over Mr. Schor's claim for benefits in accordance with 29 U.S.C. 1144b1 and Menhorn. Unlike in Menhorn, three significant events occurred after January 1, 1975, many of which have been identified by this Court already, and these events are vital to Mr. Schor's claim for benefits. First, Mr. Schor did not meet the definition of permanently and totally disabled until he received his Social Security Disability Award on June 15, 1976, with an onset date back to March 15, 1974. Second, on November 25, 2003, the plan administrator elected in its discretion to correct the plan records and to show that Mr. Schor had earned 120 units of pension credit by the time he left work in March of 1974. And finally, the plan's main defense to Mr. Schor's claim for benefits, the cancellation of his service credits following a permanent break in service, did not occur until 1977. In addition, the pre-ERISA in 1967 plan is being applied to Mr. Schor's claim by virtue of its incorporation in the 2003 plan. Menhorn held the jurisdiction does not exist when an action is based wholly on events occurring before the effective date of ERISA, January 1, 1974, when acts after January 1, 1975 were mere formalities, or where the denial is the inexorable consequence of pre-1975 events. Mr. Menhorn completed the service in question prior to 1975, and all communications that form the basis of his claim for a breach of fiduciary duty and the basis for his claim denial had all been made before 1975. In essence, his claim for benefits was identical on December 31, 1974 as it was when Mr. Schor was permanently denied in 1980, and the same is not true for Mr. Schor, although all of Mr. Schor's service was accrued prior to 1975. Between 1975 and his claim denial in 2003, he had to meet the plan's requirement that he be totally and permanently disabled, which required a Social Security Disability Award. He had had his service canceled by the plan administrator based on a permanent break-in service, and he sought and received an amendment of plan records to show that he properly had 120 units. If you took a snapshot of Mr. Schor's claim on December 31, 1974, that is not the same claim that was presented to the plan administrator in 2003. There were significant --- Scalia, go ahead. You were going to say something else, and then I'll ask you a question. There were significant events that occurred after January 1, 1975 that were necessary to demonstrate that he was eligible for a pension. Mr. Schor's claim is more similar to that of Bolton v. Construction Laborers Pension Fund of Southern California. And in Bolton, this Court determined that it had subject matter jurisdiction over events occurred over a claim that involved events prior to 1975, because after 1975, the plan administrator reviewed and applied a break-in service provision to an involuntary leave after 1975, and that's precisely what has occurred here. Why do we consider what the Social Security Administration did here when the plan administrator had no knowledge of it? The plan administrator had knowledge of it as of 2003 when Mr. Schor applied. Well, it wasn't until 2003. So at that point, why do we consider what they did in whenever they did it, which was 1976? Why is it not applicable only to the 2003 application? It is applicable to the 2003 application, and it's also applicable because it demonstrated that Mr. Schor was disabled as of his final date of work. Do you have a case that suggests that the third-party actions can be considered acts or omissions under ERISA? Not off the top of my head, Your Honor, but I'd be happy to speak to that. I couldn't find one. And even if that Social Security determination could have been considered, how is it a substantial act contributing to the cause of action? Because, in effect, this claim was not denied because Schor was not disabled. It was denied because his pension credit was canceled. Well, Your Honor, the basis of Mr. Schor's claim is that his pension was improperly denied and his pension service was improperly canceled because it was guaranteed under CanSECO. The language of the eligibility provisions in this plan are identical to those at issue in CanSECO, shall be entitled, an employee shall be entitled to retire on a benefit if he or she meets the eligibility requirements. Mr. Schor met every single eligibility requirement. Tell me how CanSECO suggests that just because one is eligible for a benefit that one is automatically vested in it. CanSECO held that that is mandatory language, shall be entitled, is mandatory language that guarantees a benefit as of the date that you fulfill all of the requirements. Mr. Schor admittedly did not fulfill the disability requirement until he received his award from the Social Security Administration in 1976, which provided an onset date of March 15th, 1974. But on December 31st, 1974, Mr. Schor did not yet have that award. And so that had to happen in order for him to meet that, meet that provision of the plan and in order for him to be guaranteed to benefits under CanSECO. There's no ground here. After being, after meeting each of the eligibility requirements and being guaranteed benefits, under Banuelos, a break in service provision cannot serve to, to eliminate a vested guaranteed benefit. I'd like to address the issue of whether or not the application provision in the plan actually serves as, as a condition of eligibility. The district court found they did not. The district court found that it did not. The district court properly found that it did not in light of CanSECO. Again, exactly like in CanSECO, this was an application provision that was outside of the eligibility provisions. There were three eligibility provisions, and Mr. Schor met all of them. That was in Section 3, Article 3, Section 8 of the plan. In Article 5, Section 1 of the plan, the plan set forth an application provision. There's no indication in the plan that that served as an eligibility provision. And that's exactly what the court found looking at a similarly formatted plan in CanSECO. We are not trying to write the application provision out of the plan. The application provision serves a purpose. The plan doesn't have to go out and find people in order to give them a benefit. People have to come to the plan, alert the plan that they want their benefit, and they have to identify where they are, and they have to identify that they're eligible for the benefit. But that doesn't make an application provision a requirement for a benefit in this plan. Indeed, the plan has demonstrated that if it wanted to make the application provision an eligibility requirement, it could. The 2003 plan requires that an application be provided within a certain amount of time after receiving the Social Security Disability Award in order to be eligible for a disability pension. That same plan says if you left before this plan was enacted, your retirement eligibility is determined by an earlier plan. Well, and as I understand the vesting benefits, he couldn't meet the vesting benefits of that particular situation because he left. Well, looking at the eligibility requirements, first of all, they're not they don't have to work in conjunction. The eligibility provisions contain the mandatory language that this Court identified in Canseco. It said if you do these three things, become disabled under age 65, have 120 units and meet one other eligibility requirement that's undisputed that Mr. Schor met, then you are entitled to a benefit. You are entitled to a benefit and it will begin payment six months after your date of disability. That's exactly what it says in the eligibility provisions. Separately, there is a vesting provision. If you look, the eligibility provisions are unambiguous, so we argue that they stand on their own. However, the vesting provision is ambiguous. If you look to the summary plan description, the summary plan description for the 1967 plan makes clear that what the vesting provision is intended to do is preserve credits for someone who has met a credit requirement for a normal pension or reduced pension or an early pension, but has not yet met the age requirement. So what this summary plan description says is if you've met this vesting provision, you're 50 years old and you have 60 units of future service credit, you can leave and go work somewhere else, and when you meet the age requirement, you can come back and we'll give you a pension. But that's not the case here. It doesn't address what happens if you have already met every condition of eligibility for a benefit and then you leave work. There's no requirement in the plan that an individual apply within a certain period of time. There's nothing in the plan that says if you don't apply within a certain amount of time, you lose your benefit. It doesn't say that in the summary plan description where it's required to under the statute and the regulations, and it doesn't say that in the plan. All it says is if you do these three things, you are entitled to receive a disability pension. And Mr. Shor believed that he was. I would also like to address the question of whether or not CanSeco must be limited to its facts and applied only to normal retirement benefits. The holding of CanSeco reiterates general rules of plan interpretation. In reaching those general rules of plan interpretation under Federal common law, it relies on cases that are outside the realm of normal retirement benefits. It relies on cases involving long-term disability benefits, citing SAFL versus Sierra Pacific. It relies on cases involving medical benefits in Ellie versus Boeing, and it involves cases involving severance benefits in Blau versus Del Monte. And in addition, since CanSeco was published and since the predecessor case that counsel for the plan referred to as Contili out of the Seventh Circuit that was issued in 2009, since 2009, CanSeco has continued to be interpreted and applied in cases involving ancillary and non-vesting welfare benefits. Two of them are cited in our papers at page 30. CanSeco was cited with regard to severance benefits in Slumer and Verity, and with regard to early retirement benefits in Brown versus Southern California, IBEW. More recently, it's also been applied continuously for the same principles in a case involving long-term disability benefits, Mitchell versus CVLS long-term disability plan. Those are all cases of this Court that demonstrate that there's no intent at this point to try to cabin CanSeco to the two normal retirement benefits. That's my reading of the case indicates that that's not what was intended, respectfully, and it doesn't appear that that's how it's been interpreted going forward. With regard to the policy concerns raised by counsel for the plan, we believe that there, that first and foremost, in order to have an application provision be a condition of eligibility, it needs to be written into the plan that way. The board trustees have the power to amend the plan. They have amended the plan since the time, since 1967. But whatever policy concerns they had along the way, they didn't incorporate into the plan that's being applied to Mr. Schor's claim for benefits. Plans have ample time and use advanced actuarial assumptions to determine how they should be funded. There's no indication that the application provisions as they stand in any way jeopardize the plan. What we're asking is that the Court consider this case in the same light as CanSeco and determine that employees who have earned a benefit under a plan and who have worked, Mr. Schor worked over a decade before suffering a fall and being severely disabled on the job. And he believed that his time, the contributions made on his behalf to a plan, and the language of the contract between himself and the plan entitled him to a benefit, because that's what the plain language of the plan said. And today, that's exactly what we're trying to do. And we're trying to achieve for him a benefit of $79.20 per month, and we're trying to preserve the district court's ruling that he is also entitled to retroactive benefits that total $34,372 back to 1974, plus prejudgment interests. And there's been no demonstration that any provision of the plan document divests him of his right to benefits that's been established by Article III, Section 8, and the interpretation of that language by this Court in CanSeco. Thank you, Counsel. Thank you, Your Honors. Just a few points, Your Honor. First, the important point here is on the 1967 plan. To the extent it was incorporated, it was incorporated with its termination of participation rules. If you contrast Section 104e of the 19th of the current plan, it talks about vested people who have rights to payment. What's important is Mr. When Mr. Schor finally got around to applying, he was no longer an employee. He no longer had his 120 units of credit. That we know. There is no vesting simply because he once could have been eligible. This was a very ancillary benefit. Indeed, if you look at Article III, Section 12 of the 1967 plan, which is at page 806 of the record, it allows you to come back after disability with no charge for the benefits you've received. It's purely a short-term disability insurance policy, or a long-term one if it proves long-term. But you do have to apply, and you do have to be an employee within the plan when you apply. As far as the post-1975 facts, the SSA award is just the result of the March 1974 disability. It's not anything that the plan does. It's not anything that Mr. Schor does. It's the result of his disability. It's not a new and separate act. There is, again, there is no vesting. Ms. Nago continues to return to the structural defect case law that said that it was arbitrary and capricious and rewrote plans to require vesting on disability. The Supreme Court overruled those decisions in Demacy, and the structure of the statute itself now clearly indicates that those benefits are not vested simply by reason of disability. It limits that function to normal retirement benefits. If you go to the current plan, Section 701C, which is on the record, page 432 of the record, clearly prohibits any retroactive payment for anybody who's in the plan. It also gives the trustees the discretion to read even the 1967 plan, and I think they've done reasonable, done that reasonably. This plan, it said that an application is a condition of eligibility. It put an express limit on disability claims. I will leave my comments on attorney's fees to the brief, and thank the panel for your attention today. Thank you. Thank you very much, Justice. The case to be argued will be submitted. The Court will stand in recess until the verdict.
judges: Reinhardt, Hawkins, Smith N. R.